(72 South. 742)

No. 21964.

COLEMAN v. CONTINENTAL BANK & TRUST CO.

(June 30, 1916. Rehearing Denied Oct. 16, 1916.)

*(Syllabus by the Court.)*

1. PLEADING  &#9758;245(1) — AMENDMENT — PETITION.

The plaintiff may, with leave of court, amend his petition after issue is joined, provided the amendment does not assert a demand different from the relief first sought, or change the substance of the original demand.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 653, 655; Dec. Dig. &#9758;245(1).]

2. HOMESTEAD  &#9758;193 — ENFORCEMENT OF RIGHT—TIME FOR CLAIM.

It is not too late for a debtor to claim the $2,000 reserved as a homestead exemption after the sheriff has made an adjudication of the property subject to the homestead for a bid exceeding $2,000, so long as the proceeds of the sale remain in the hands of the sheriff or of the purchaser at the sheriff's sale.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 364; Dec. Dig. &#9758;193.]

Appeal from Second Judicial District Court, Parish of Bossier; John N. Sandlin, Judge.

Action by W. E. Coleman against the Continental Bank & Trust Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Jas. E. Smitherman, of Shreveport, for appellant. Foster, Looney & Wilkinson, of Shreveport, for appellee.

O'NIELL, J. The Continental Bank & Trust Company filed executory proceedings against W. E. Coleman, on two promissory notes of $750 each, secured by a mortgage on the residence of Coleman and his family,

described as fractional block 14 E. of the McCormick Annex to Bossier city. The executory process was numbered 6242 on the docket of the district court. On the same day the same plaintiff filed executory proceedings against Coleman on another promissory note for $2,000, secured by a mortgage on lot No. 8 of block No. 8, and lots No. 1, No. 2, and No. 3 in block 11 E. of the McCormick Annex to Bossier city. The latter executory process was numbered 6241 of the docket of the district court. The suits bore the same title—Continental Bank & Trust Co. v. W. E. Coleman. The lots No. 1, No. 2, and No. 3, in block 11, had been seized and sold under a senior mortgage, and were released from the seizure in the suit No. 6241. The sheriff seized and advertised for sale the properties affected by the respective mortgages.

A few weeks after the seizure and before the day of sale, Coleman was adjudged a bankrupt in the United States District Court, and the property described as fractional block 14 E. of the McCormick Annex to Bossier City was set aside by the referee as the homestead of the bankrupt Coleman.

Thereafter, before the day on which the property seized in the suits of the bank was to be sold by the sheriff, Coleman filed the present suit against the bank and the sheriff to have the property occupied by him and his family as their residence recognized and decreed to be his homestead, exempt from seizure, and, in the alternative, to be paid $2,000 if it should sell for more than that sum. By an error, instead of describing fractional block 14, on which the plaintiff and his family resided, the petition described lot No. 8 of block No. 8 and lots No. 1, No. 2, and No. 3 of block 11 E. of the McCormick Annex to Bossier City; and instead of alleging that the homestead was seized in the suit numbered 6242, it was alleged that the property was seized in the suit numbered 6241. On the morning of the day on which the sheriff was to sell the property, Coleman's attorney discovered that he had made the mistake in the description of the property in his petition, and requested that the sale be postponed until he could amend the petition. Counsel for the bank objected to a postponement of the sale; and, at the appointed hour, the sheriff proceeded to sell the property seized in both suits. Lot No. 8 in block 8, seized in the suit No. 6241, was sold by the sheriff for $250; and fractional block 14, seized in the suit No. 6242, was adjudicated to the bank for $2,500. The attorney for the bank immediately tendered to the sheriff $300, to pay the costs in the suit numbered 6242, and requested that the bank be allowed to retain the balance of the purchase price in satisfaction of the debt due the bank. The sheriff refused the tender, and notified the attorney for the bank that he would not make a deed of the property to the bank unless the entire purchase price was paid into his hands. The attorney for the bank then called the sheriff's attention to the fact that the suit filed by Coleman referred not to the property described as fractional block 14, that had been seized in the suit No. 6242, but referred to the property seized in the suit No. 6241. The sheriff and the attorney for the bank then proceeded to ascertain the amount of costs to be paid by the bank; but before they completed their calculation, that is, about 20 minutes after the property had been adjudicated to the bank, Coleman's attorney appeared with an amended petition correcting the error made in the original petition in Coleman's suit, and requested the sheriff to accept service on the amended petition. The sheriff accepted service, making note of the fact that the service was accepted 20 minutes after the adjudication to the bank. The attorney for the bank then deposited with the sheriff the amount the bank had bid for fractional

block 14, $2,500, under protest, and requested that a deed be given to the bank, which was done. Two days later an arrangement was made between the sheriff and the bank, whereby the sheriff returned to the bank the amount due on the writ in the suit No. 6242, for which the bank gave the sheriff an extra-judicial bond or obligation to indemnify the sheriff against any loss that he might incur by the return of the funds to the bank. The amended petition was served on the bank about 3 weeks later.

When the attorney for Coleman filed the amended petition in the clerk's office, he discovered that the clerk had not docketed the original petition as if it were the beginning of a new suit, but had indorsed upon it the title and number of one of the suits of the bank against Coleman, viz. Continental Bank & Trust Co. v. W. E. Coleman, No. 6241. The attorney immediately had the clerk docket the original and supplemental petition as a new suit, entitled W. E. Coleman v. Continental Bank & Trust Co. et al., No. 6274.

Answering the original and supplemental petition of Coleman, the bank admitted the seizure of lot 8 in block 8 in suit No. 6241, and alleged that it had been sold under the writ of seizure and sale; denied that the property was exempt as a homestead; denied that fractional block 14 was seized in the suit No. 6241; denied that the mortgage securing the note of $2,000 was secured by a mortgage on any property occupied by the plaintiff or his family as a residence; alleged that the petition in the suit entitled W. E. Coleman v. Continental Bank & Trust Co. et al., No. 6274, was originally filed and indorsed as a petition of intervention in the suit No. 6241, entitled Continental Bank & Trust Co. v. W. E. Coleman, and so remained filed and indorsed until after the property was sold by the sheriff; and alleged that the sheriff had accepted service on the amended petition after the property was sold at public auction. The defendant denied the sheriff's right or authority to retain $2,000 or any part thereof to satisfy the plaintiff's demand, and averred that lot 8 of section 8 was sold by the sheriff for only $250.

[1] Coleman's attorney thereafter discovered that in his amended petition he had, through error, alleged that fractional block 14 was seized in suit No. 6241, whereas it had in fact been seized in suit No. 6242; and he filed a second amended petition correcting the error. The defendant's counsel objected to this second amendment of the plaintiff's petition, on the ground that it was filed too late and changed the substance of the demand. To the overruling of his objection, defendant's counsel reserved a bill of exceptions, which is urged on appeal. A number of decisions are cited in support of the rule of pleading, that an amendment of the petition should not be allowed if it alters the substance of the original demand or changes the issues. We agree with the district judge that the second amendment to the petition did not alter the substance of the original demand or change the issues in the case. As the two suits in which Coleman's property was seized were both executory proceedings and bore the same title, one numbered 6241 and the other numbered 6242, the mistake of alleging that the homestead was seized in the suit No. 6241, when in fact it was seized in the suit No. 6242, was a likely one for the plaintiff's attorney to make, and in our humble opinion the bank, being plaintiff in both suits, and having seized the property in one of them, was not prejudiced nor misled by the allegation that the homestead was seized in the suit No. 6241, when in fact it was seized in suit No. 6242. It is expressly provided in the Code of Practice (art. 419) that the plaintiff may, with leave of the court, amend his petition after issue is joined, provided the amendment does not alter the substance of his demand or assert

a demand different from the relief first sought. We affirm the ruling of the district judge, allowing the second amendment of the plaintiff's petition. See Bussey & Co. v. Rothschild, 27 La. Ann. 316, Meyer v. Farmer, 36 La. Ann. 785, Payne v. M. L. & T. R. R. & S. S. Co., 38 La. Ann. 164, 58 Am. Rep. 174, and Davis v. Arkansas Southern Railway Co., 117 La. 320, 41 South. 587.

The defendant did not take exception to the first amendment of the petition, because it is well settled that the plaintiff may file as many supplemental or amended petitions as he sees fit before the defendant has appeared to answer or except to the original petition. See Lehman Dry Goods Co. v. Lemoine, 129 La. 382, 56 South. 324.

Judgment was rendered in favor of the plaintiff, recognizing fractional block 14 E. of the McCormick Annex to Bossier City to be the plaintiff's homestead and ordering the sheriff to pay to the plaintiff $2,000 out of the proceeds of the sale of the property. The defendant, Continental Bank & Trust Co., has appealed.

[2] The defendant contends that the plaintiff's claim for recognition of the homestead exemption was not asserted in time to be of any avail; that the first amendment of the petition was filed too late, because the adjudication of the property had been made to the bank 20 minutes before service was accepted on the amending petition; that, even if that amendment had been filed before the property was adjudicated to the bank, it could not avail the plaintiff, because of the error of alleging that the homestead was seized in the suit No. 6241, when in fact it was seized in suit No. 6242; and that the second amendment of the petition, correcting the error as to the number of the suit in which the homestead was seized, was filed after the proceeds of the sale of the property had been disbursed, and there was then no property or funds on which to assert a homestead in the hands of the sheriff. The defendant relies upon the decisions of this court in Kuntz v. Baehr et al., 28 La. Ann. 90, Gilmer v. O'Neal, 32 La. Ann. 979, and Johnson v. Agurs, 116 La. 634, 40 South. 923, in support of his contention that the homestead exemption in this case was asserted too late to be of any avail to the plaintiff. In Kuntz v. Baehr et al., the plaintiff did not file a petition for the recognition of his homestead exemption before the sheriff made the sale to Baehr, but merely notified the sheriff and the seizing creditor that the property seized was his homestead; and, after the sheriff had completed the sale of the property to Baehr and disbursed the proceeds, Kuntz, the former owner and debtor, attempted to enjoin the sheriff from putting the purchaser into possession of the property. It was held that the sale of the property had divested the plaintiff of the homestead exemption. The decision was cited with approval in Gilmer v. O'Neal, where, under somewhat similar circumstances, it was said that a debtor, who does not judicially assert his claim to a homestead before his title to the property is divested by a sale, loses his right to the exemption. The decision in Johnson v. Agurs is against the defendant's contention. There it was said that the plaintiff's demand was timely, having been instituted before the purchaser at the sheriff's sale had paid out the proceeds of the sale. It was said that the plaintiff's position was that of a defendant in execution claiming a surplus in the hands of the sheriff, on which none of the creditors were entitled to be paid by preference.

The decision in Johnson v. Agurs, supra, was quoted with approval in Abbott v. Heald, 128 La. 722, 55 South. 28, where it was again held that the debtor could claim the $2,000 reserved to him as a homestead exemption, in case of a judicial sale of the homestead, as long as the proceeds of the sale remained

in the hands of the sheriff or of the purchaser at the sheriff's sale.

The defendant's counsel contends that, as the bank had the right to retain the proceeds of the sale in satisfaction of its mortgage, the proceeds of the sale were absorbed by confusion, the bank being both debtor and creditor for the same sum, and that there was therefore no fund in existence to represent the proceeds of the sheriff's sale when the plaintiff filed his first amending petition, correcting the error in the original petition, as to the description of the homestead. There might be some merit in that contention if the sheriff had completed the sale by collecting the costs from the adjudicatee, permitting the latter to retain the surplus of the proceeds of the sale in satisfaction of the mortgage debt, and making a deed to the bank. But the sheriff had been notified of the error in the description of the property in the plaintiff's original petition, and he therefore refused to complete the sale, demanding that the purchaser pay the entire proceeds to him, the sheriff, under the order that had been obtained to hold the proceeds on the petition containing the error in the description of the homestead. And, before the sale was completed by the sheriff, the error in the description of the homestead in the original petition was corrected by filing the supplemental or amending petition. We are not called upon to decide whether the sheriff was or was not justified in delaying matters until the plaintiff's attorney could correct the error and assert his demand on the proceeds of the sale of the homestead. Assuming that the adjudicatee had the right to take advantage of the error in the original petition and to insist that the sheriff complete the sale and disburse the proceeds before the error could be corrected, as a matter of fact the sheriff did not complete the sale and disburse the proceeds. That he might have done it does not alter the fact that he did not.

Our conclusion is that the plaintiff's demand for recognition of his homestead exemption was asserted in time to avail him if he was entitled to the exemption.

The plaintiff and his family, consisting of his wife and four children depending upon him for support, occupied the property in dispute as their home at the time he gave the mortgage; they had lived there 16 years, up to the day before this suit was tried, when the sheriff ordered them to vacate.

It is contended by the defendant's counsel that the plaintiff abandoned the homestead by moving out of the house and renting it to a tenant. The facts in that regard are that the plaintiff left his home and went to another town about 30 miles away, where he engaged in a small grocery business, in August, 1911, and returned to his homestead in January, 1912. After having moved to the town where he engaged in business, he brought his wife and children there, and they returned with him to the homestead. Plaintiff testified that he did not intend to abandon his homestead, and his testimony is corroborated. When he left his home, a neighbor proposed renting it, but the plaintiff refused to rent it for more than a month, saying that he intended to return and did not know how soon he would return. The tenant refused to rent the house under those conditions, but, with the permission of the plaintiff, occupied it less than a month and was not charged any rent for the occupancy. The plaintiff left some of his furniture and household furnishings in the house, and kept one room completely furnished for his own use, which was occupied by the plaintiff's father-in-law, during the plaintiff's absence, and a part of the time by another man, with the plaintiff's permission. The circumstances, in our opinion, show that the homestead was not abandoned.

The judgment appealed from is affirmed, at the cost of the appellant.